# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:13-CV-00113-TBR

MICHAEL HATCHER     Appellant,

v.

LEE H. PURDY and
ROBERT W. KEATS     Appellees.

## MEMORANDUM OPINION

This matter is before the Court upon an appeal from the United States Bankruptcy Court for the Western District of Kentucky in an action arising from the bankruptcy of Lee H. Purdy. (Bankruptcy Petition No. 12-11592-JAL.) Appellant Michael Hatcher, a creditor of Purdy, argues that the Bankruptcy Court erred by assessing punitive damages against him for repossessing property after the bankruptcy petition was filed. Fully briefed, this matter is ripe for decision. For the following reasons, the Court AFFIRMS the decision of the Bankruptcy Court.

## Factual Background

The facts are generally undisputed. On June 24, 2012, Hatcher sold eighty-four dairy cattle to Purdy for $1,550 per head. The two agreed that Purdy would pay for the cattle at $20,000 by way of milk assignment. He made two such payments, then terminated the milk assignment and paid for the next month by check.

On November 29, 2012, Purdy filed a Voluntary Petition seeking relief under Chapter 12 of the United States Bankruptcy Code. The next day, having learned that Purdy's financial situation was bleak, Hatcher removed forty-five dairy cows from Purdy's farm. Hatcher testified

that on this date, he did not know that Purdy had filed for bankruptcy, but learned of the filing the following week. On December 6, 2012, Hatcher joined Purdy's counsel and representatives of several of Purdy's creditors at Purdy's farm to count the number of cattle on the property. The parties agree that Hatcher knew of Purdy's bankruptcy filing on this date.

Purdy filed a Motion for Contempt against Hatcher on December 11, 2012. After Hatcher received the Motion, he met with his counsel on December 20, 2012. The next day, Hatcher followed his counsel's advice to return forty cattle to Purdy's farm; later, he returned two more cows, having sold the remaining three.[1]

On January 22, 2013, the Bankruptcy Court entered an order finding Hatcher in contempt of court based on his willful violation of the automatic stay of 11 U.S.C. § 362. The Bankruptcy Court awarded actual damages of $18,568 and $5,000 in punitive damages. Hatcher then moved the bankruptcy court to vacate this Order. Following an evidentiary hearing, the Bankruptcy Court determined that there was no basis to amend or vacate its Order, as Hatcher had notice of Purdy's bankruptcy filing for nearly three weeks before he finally returned the cattle on December 21, 2012.

Hatcher now argues that the Bankruptcy Court erroneously assessed punitive damages against him. He contends that he was unaware of the bankruptcy petition until after he repossessed the cattle and that he immediately returned the cattle upon meeting with his attorney.

**Standard of Review**

---

[1] Based on the calculations enumerated in the Motion for Contempt, Hatcher paid Purdy $8,200 for the three cows that he had sold and for the lost milk proceeds. He also paid Purdy's attorney's fees in the amount of $2,800. Hatcher did not rebut Purdy's testimony that he lost $13,000 in milk production due to the cows' weight loss, which was caused by their repeated movement throughout December.

2

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a). The District Court is bound by the clearly erroneous standard of review for the bankruptcy judge's factual determinations, giving due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses. Fed. R. Bankr. 8013. A bankruptcy court's findings of fact should not be disturbed without "most cogent evidence of mistake or miscarriage of justice." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).

The District Court reviews *de novo* the Bankruptcy Court's conclusions of law. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 529, 631 (6th Cir. 1994). The parties agree that the instant dispute hinges upon a legal question centering upon whether the Bankruptcy Court applied the correct standard of egregious conduct for awarding punitive damages. The Bankruptcy Court's interpretation of the statute constitutes a conclusion of law subject to plenary review. However, if the Bankruptcy Court correctly interprets the statute, its conclusions as to whether the parties complied with it involves factual findings that will be reversed only clearly erroneous. *In re Zwagerman*, 125 B.R. 486, 489 (E.D. Mich. 1991).

**Discussion**

Section 362's automatic stay prohibits "any act to obtain possession of the property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay becomes effective at the moment a debtor's bankruptcy petition is filed: "[t]he stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted." *NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.*, 755 F.2d 1253, 1258 (6th Cir. 1985) (citation omitted). When an individual is injured by a

willful violation of a stay, he "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

The imposition of punitive damages is left to the Court's discretion. *See In re Timbs*, 178 B.R. 989, 997 (Bankr. E.D. Tenn. 1994). "Even in the absence of any overt wrongful intent, an award of punitive damages may still be appropriate for a violation of the automatic stay when there is a strong showing that the creditor acted in bad faith or otherwise undertook their actions in reckless disregard of the law." *In re Henderson*, 2011 WL 1838777 (Bankr. E.D. Ky. May 13, 2011) (quotation omitted). Generally, punitive damages are awarded only in cases involving conduct that is egregious, vindictive, or intentionally malicious. *See, e.g., In re Bivens*, 324 B.R. 39, 40 (Bankr. N.D. Ohio 2004).m

Hatcher concedes that his possession of the cattle between December 6, 2012—when he had knowledge of the bankruptcy—and December 21, 2012, can be construed as a willful violation of the automatic stay. However, he contests the additional sanction of $5,000 in punitive damages. According to Hatcher, the bankruptcy court relied solely upon the fifteen-day delay in Hatcher's return of the cattle in assessing punitive damages. In Hatcher's telling, he "immediately" returned the cattle on the advice of counsel and when he received the Motion for Contempt. He contends that no evidence indicates that he acted egregiously or in bad faith, nor did the Bankruptcy Court make such a determination.

However, based on Hatcher's own testimony, the Bankruptcy Court concluded that he learned of Purdy's bankruptcy filing nearly three weeks before meeting with his attorney and returning the cattle. The record before the Court indicates that Hatcher did not return the cattle "immediately" after learning of the filing; rather, for twenty-one days after learning that Purdy

4

had filed for bankruptcy, he retained the cows and received payment for the milk they produced. Despite his knowledge of Purdy's pending bankruptcy, Hatcher continued with his collection efforts in disregard of the protections afforded by the stay. Therefore, the Bankruptcy Court's decision to hold Hatcher in contempt was proper. *See* 3 Collier on Bankruptcy ¶ 362.12(2) (16th ed. 2012) ("If the [creditor's] conduct is willful, even if based upon advice of counsel, contempt is an appropriate remedy.").

Moreover, Hatcher learned that Purdy filed for bankruptcy nearly three weeks before he met with his attorney and ultimately returned the cattle to Purdy's farm. During this three-week period, Hatcher retained possession of the cows and received proceeds from the milk they produced. The Bankruptcy Court determined that punitive damages were appropriate based on Hatcher's continued possession, concluding that it constituted a wilful violation of the automatic stay. Although Hatcher perhaps lacked a high level of culpable intent, the Bankruptcy Court found that a an award of punitive damages was nonetheless appropriate. This Court will not disturb that finding.

## CONCLUSION

For the reasons discussed above, the Bankruptcy Court's order of May 29, 2013 is hereby AFFIRMED.